**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| Maunta Banks, ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | No. 1:21-cv-21 (AJT/IDD) |
| ) | |
| Brown, *et al.*, ) | |
|     *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Brown, Cuevas, and Ruffin's motion for summary judgment based on an alleged failure to exhaust administrative remedies. [Doc. No. 33] (the "Motion"). For the reasons explained herein, the Motion shall be **DENIED**.

**I. PROCEDURAL HISTORY**

Plaintiff Maunta Banks ("Plaintiff" or "Banks"), a Virginia inmate proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 for alleged violations of his rights during his incarceration at the Sussex I State Prison ("Sussex I"), a unit of the Virginia Department of Corrections ("VDOC"). [Doc. No. 1] (the "Complaint"); *see also* [Doc. No. 8] (the "Complaint Addendum," or "Addendum").[1] The Complaint names five defendants who are or were employed by VDOC at Sussex I: Mrs. Brown, Unit Manager; Lt. A. Cuevas, Building Supervisor; Lt. Dudley; Sgt. Craft; and Maj. Ruffin, Head of Security. *Id.* at 1–3. Defendants Brown, Cuevas, and Ruffin (the "MSJ Defendants") filed the Motion supported by a brief and an affidavit. [Doc. Nos. 33, 34]. Plaintiff has exercised his rights pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)

---

[1] Although the cited docket entry refers to the Complaint Addendum as an "amended complaint," it is clear from the information in the form that Banks intended to supplement, rather than displace, his original complaint. Accordingly, the Court does not construe the supplement as a new or amended complaint, and relies in part on the detailed allegations in the Complaint, [Doc. No. 1], that do not appear to be contested by Defendants for the purposes of this Order.

and Local Rule 7(K) by filing a detailed response to the Motion and attaching much of the administrative record presently at issue. [Doc. No. 40].

Defendants Dudley and Craft have each been served independently in this action, [Doc. Nos. 29, 30]; however, while both have been directed by the Court to file an answer or other responsive pleading to the Complaint, neither has made an appearance in this matter. The Court entered show cause orders on March 16, 2022 and March 6, 2023 (after the Motion was filed), but neither Defendant responded. [Doc. Nos. 31, 41].[2]

Notwithstanding Dudley and Craft's failure to respond, on August 1, 2023, the Court reviewed the record and determined that the Motion may "apply with equal force to Defendants Craft and Dudley," and gave notice "to all parties that summary judgment may be entered for nonmovant defendants Craft and Dudley on the grounds set forth in the other Defendants' pending Motion for Summary Judgment and accompanying memorandum and exhibit, as well other documents and admissions in the record." [Doc. No. 42] at 2 (citing Fed. R. Civ. P. 56(f)(l) (permitting a grant of summary judgment to a nonmovant "[a]fter giving notice and a reasonable time to respond")); *see Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (granting summary judgment *sua sponte* in favor of all defendants where plaintiff already had notice and opportunity to demonstrate a genuine issue of material fact, based on another co-defendant's motion for summary judgment). The Court's August 1, 2023 Order provided Banks with notice and an opportunity to respond. *Id.* at 2–3.

On August 18, 2023, Banks did respond, but only asked the Court to enter default judgment against Dudley and Craft, rather than address how the MSJ exhaustion arguments could be

---

[2] The March 6, 2023 show cause order sent to Dudley was returned on August 8, 2023 marked "Unable to Forward." [Doc. No. 44].

distinguished as to Dudley and Craft. [Doc. No. 45]. The Court will address Plaintiff's filing, construed as a motion for default judgment, in a separate order.

## II. LEGAL STANDARD

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014); *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, the nonmovant must present specific facts that demonstrate a genuine dispute for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A verified complaint, whether operative or superseded, serves as "the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are

3

based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted).

### III. DISCUSSION

The Prison Litigation Reform Act ("PLRA") provides in relevant part that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, MSJ Defendants bear the burden of proving lack of exhaustion. *See Jones v. Bock*, 549 U.S. 199, 212, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Nevertheless, "exhaustion in cases covered by § 1997e(a) is mandatory," and district courts have no discretion to waive this requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Furthermore, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). Those rules "are defined not by the PLRA, but by the prison grievance process itself," and thus "it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Id.* Consequently, the VDOC's Grievance Procedure, Operating Procedure 866.1 ("OP 866.1"), defines the applicable rules for Plaintiff to properly exhaust his Section 1983 claims prior to bringing this suit.

Pursuant to the Grievance Procedure, in order to properly exhaust his claims, Plaintiff was required to (1) file a Regular Grievance that was accepted for intake, and then (2) appeal that Regular Grievance through all eligible levels of review without satisfactory resolution, before raising those claims for review in federal court. OP 866.1.IV.O.2.b. Here, the MSJ Defendants

4

argue that they are entitled to summary judgment because Plaintiff failed to exhaust all available administrative remedies before filing suit, as the PLRA requires. [Doc. No. 34] at 8–11.

A threshold inquiry to exhaustion, however, is whether the grievance procedure was actually available to Plaintiff, because the duty to exhaust in the PLRA "hinges on the availability of administrative remedies." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court has interpreted availability to mean "capable of use" or "accessible or may be obtained." *Id.* at 642. The Supreme Court has further explained that the grievance process is not capable of use or accessible where, (1) officers are unable or consistently unwilling to provide any relief to aggrieved inmates, (2) where the scheme is so opaque that, as a practical matter, "no ordinary prisoner can navigate it," or (3) where prison administrators thwart inmates from taking advantage of the procedure, whether through threats, misrepresentations, or otherwise. *Id.* at 643–44.

Here, Plaintiff's Complaint, [Doc. No. 1], along with his reply, [Doc. No. 40], which is sworn to under penalty of perjury and notarized, and may therefore be received as record evidence, E.D. Va. Loc. Civ. R. 7(K)(3), describes numerous specific instances in which he requested grievance documents to be mailed out to the appropriate recipients and was denied the opportunity to do so. Specifically, Banks affirms not only that the Sussex I officers refused to provide timely responses to his informal complaints, for which the grievance procedure provides an adequate remedy, *see* OP 866.1 (V)(B)(2), but also that he *repeatedly* made efforts to mail the formal grievances and appeals to the appropriate parties, and that the officers at Sussex I, including named Defendants in this action, refused to facilitate the mailing of the grievances. *See* [Doc. No. 40] at 3 ("I wrote in the grievance that I attached the informal complaint because I knew the officers there inter [sic] with the grievance procedure … [t]hey're either lying saying I didn't attach the informal complaint or some other S1SP officer separated it when I put it in the mail."); *id.* at 9

(describing how on January 7, 2020, Plaintiff "[s]ent instructions with 3 grievances to grievance coordinator asking her to forward them to the regional ombudsman because officers kept *returning my grievances* that I tried to send out." (emphasis added)); *id*. at 10 ("Attempted to give documents that were returned to me by c/o Walker to Mr. Vancampen at ICA hearing to turn in to grievance office. He skimmed through them and gave them back to me refusing to turn them in for me."); *id*. at 12 ("I gave the packet of documents Mr. Vancampen refused to turn in for me, to Officer Dunlow with instructions to get it out the building and to the grievance coordinator. He assured me he would. Officer Dunlow gave them to Lt. Cuevas instead. Lt. Cuevas gave them to Sgt. Dial … Sgt. Dial brings the packet of documents back to me."); *see id*. ("I was unable to send the packet of documents to the regional ombudsman within the 5-day time period because the officers wouldn't send them out.").

The record contains unchallenged and uncontradicted evidence that supports Plaintiff's contentions, including the grievance forms attached to his reply. For instance, several informal and formal grievances themselves grieve the lack of response from the officers to his previous informal grievances, and the refusal of the officers to follow grievance procedure generally. *See, e.g*., [Doc. No. 40-1] at 10 ("There is no way that you can tell me that my grievances are being processed correctly when I've filed over 50 grievances and informal complaints and all of them I've been time barred or they've disappeared outright or some other unfavorable outcome"); *see also* [Doc. No. 40-1] at 30 ("SSI state prison prevented me from effectively using the grievance procedure while I was housed there … in an attempt to get me time barred on filing. They did this by doing the following[:] [r]efusing to turn some of my grievances and informal complaints in. Turning them in late. Turning them in and not sending them back in a timely fashion."); *see also* [Doc. No. 40-1] at 41. The grievance documentation also shows that Banks repeatedly appealed to higher

levels of review about these exact issues, including to the Regional Ombudsman and to the Governor of Virginia, before turning to this Court. [Doc. No. 40-1] at 14 ("The grievance procedure at Sussex I State Prison is broken and needs to be fixed. Some of the c/o's, unit managers, and the grievance coordinator does everything in their power to prevent offenders from effectively utilizing the grievance procedure."). Accordingly, the Court finds that MSJ Defendants have not carried their burden in establishing that Plaintiff failed to exhaust his administrative remedies as required.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Motion [Doc. No. 33] be, and the same hereby is, **DENIED**; and the case will proceed to a consideration of Plaintiff's claim (and Defendants' defenses) on the merits; and it is further

**ORDERED** that the Parties are directed to file any motions for summary judgment on the merits within 21 days, should they contend that they are entitled to judgment as a matter of law based on undisputed facts.

The Clerk is directed to send a copy of this Order to all counsel of record, and to the *pro se* Defendants, Dudley and Craft, and to the *pro se* Plaintiff at his address of record.

Alexandria, Virginia
February 29, 2024

_____
Anthony J. Trenga
Senior U.S. District Judge

7